**FILED - GR**

November 30, 2022 2:20 PM
CLERK OF COURT
U.S. DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
BY: KB   SCANNED BY: ᴶᴹ /12-1

John J. Myerscough
55 Lake Havasu Ave.
Lake Havasu City, Arizona 86403
(928) 486-1135
jm@azlegalassist.com
*Plaintiff Pro Se*

**1:22-cv-1136**
**Jane M. Beckering**
**U.S. District Judge**

## IN THE UNITED STATES DISTRICT COURT
## IN AND FOR THE WESTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| **JOHN J. MYERSCOUGH**, (hereinafter referred to as "**Plaintiff**") an individual and resident of the state of Arizona,<br><br>Plaintiff,<br><br>vs.<br><br>(1) **THE UNITED METHODIST CHURCH** (hereinafter referred to as "**United**"), a religious entity operating out of the United States of America, with its headquarters, offices, and publishing houses located in the state of Tennessee, *and*<br><br>(2) **PICKFORD UNITED METHODIST CHURCH** (hereinafter referred to as "**Pickford**"), a religious entity operating out of the state of Michigan, *and*<br><br>(3) **CAROL SUE MCDONALD** (hereinafter referred to as "**Mrs. McDonald**"), an individual and resident of the state of Michigan, *and*<br><br>(4) **TIMOTHY BASHORE** (hereinafter referred to as "**Mr. Bashore**"), an individual and resident of the state of Michigan,<br><br>Defendants. | **COMPLAINT FOR (1) CIVIL EMBEZZLEMENT; (2) CIVIL FINANCIAL FRAUD AND RACKETEERING; (3) FRAUD, MISREPRESENTATION, AND CONCEALMENT; (4) CIVIL AIDING AND ABETTING OF A BREACH OF FIDUCIARY DUTIES; (5) UNJUST ENRICHMENT; AND (6) PERMANENT INJUNCTION**<br><br>**(JURY DEMANDED)**<br><br>Case Number:<br><br>Judge: |

The above-captioned Plaintiff, proceeding in this matter *pro se*, hereby files this complaint

(hereinafter referred to as this "**Complaint**") against Defendants United, Pickford, Mrs.

Page **1** of **31**

McDonald, and Mr. Bashore (hereinafter jointly referred to as "**Defendants**"), for civil causes of action alleging **(1)** Civil Embezzlement; **(2)** Civil Financial Fraud and Racketeering; **(3)** Fraud, Misrepresentation, and Concealment; **(4)** Civil Aiding and Abetting of a Breach of Fiduciary Duties; **(5)** Unjust Enrichment; and **(6)** Permanent Injunction.

This is an action with damages of or exceeding **$12,000,000.00**, exclusive of interest, costs, and attorney's fees.

## PARTIES

1.      Plaintiff **John J. Myerscough** is an individual over the age of 18—who is, therefore, *sui juris*—who resides in the state of Arizona, who is named as a beneficiary in the Dorothy Grace Myerscough Trust (hereinafter referred to as the "**Trust**"), and who was damaged significantly by Defendants' wrongful conduct and their egregious misappropriation of the Trust's funds; Plaintiff seeks a permanent injunction against Defendants as a remedy, among other legal remedies available and named herein, to his damages, and to prevent Defendants from further damaging Plaintiff via legal process or otherwise.

2.      Defendant **United** is a religious entity operating in the United States of America, with its headquarters, offices, and publishing houses located in the state of Tennessee, who, under the doctrine of *Respondeat Superior*, is, upon information and belief, liable for the embezzlement and other tortious conduct committed by its affiliate and subsidiary, Pickford, as well as for the embezzlement and other tortious conduct committed by Mrs. McDonald and Mr. Bashore, both of whom are employed at Pickford, and by extension, therefore, they are also employees of United.

3.      Defendant **Pickford** is a religious entity operating within the state of Michigan, who co-conspired with Mrs. McDonald and Mr. Bashore to embezzle funds from the Trust, among other tortious conduct.

4.      Defendant **Mrs. McDonald** is an individual over the age of 18—who is, therefore, *sui juris*—who resides in the state of Michigan, who is on staff at Pickford, and who co-conspired with the other Defendants named herein to embezzle funds from the Trust for her personal use, among other things.

5.      Defendant **Mr. Bashore** is an individual over the age of 18—who is, therefore, *sui juris*—who resides in the state of Michigan, who is employed as a pastor at Pickford, and who co-conspired with the other Defendants named herein to embezzle funds from the Trust.

6.      Plaintiff reserves the right to include other additional defendants, in Plaintiff's sole discretion, if said defendants are discovered through the process of discovery or otherwise.

### JURISDICTION AND VENUE

7.      Pursuant to 28 U.S. Code § 1332, this Court has subject-matter jurisdiction in this case because **(i)** Plaintiff is a resident of the state of Arizona; because **(ii)** United operates within the entire country but more specifically from the state of Tennessee; because **(iii)** Pickford is located in and operates out of the state of Michigan; because **(iv)** Mrs. McDonald is a resident of the state of Michigan and currently lives there; because **(v)** Mr. Bashore is a resident of the state of Michigan and currently lives there; and because **(vi)** the amount in controversy in this matter exceeds $75,000.00; therefore, with there being parties from different states in this matter, as well as with there being damages in excess of $75,000.00, this is an indubitable diversity of citizenship case, so this case must be addressed by a federal court—this Court.

8.      Pursuant to 28 U.S. Code § 1391(b), the venue in this court is proper because the events giving rise to this claim occurred primarily within the boundaries of the District of Michigan, since Mrs. McDonald and Mr. Bashore reside in Michigan and perpetrated wrongdoing against Plaintiff and against the Trust while in Michigan and from Michigan.

## GENERAL ALLEGATIONS AND STATEMENT OF FACTS

### *Embezzlement and Laundering of "Charitable Donations"; Breach of Fiduciary Duty*

9.      This Complaint is based on the egregious embezzlement and the laundering of the Trust's funds, among other causes of action, in an estimated amount of more than **$360,000.00** over the course of **twenty-five years**, on the part of Mrs. McDonald, who co-conspired with the other named Defendants—specially United—to embezzle the Trust's funds and launder them through Pickford; furthermore, Mrs. McDonald is a principal on staff within Pickford and its affiliates, such as United.

10.      In addition, the lawsuits generated by Mrs. McDonald and Defendants cost the Trust approximately more than **$240,000.00** in legal fees to defend Mrs. McDonald's and Defendants' criminal actions.

11.      Furthermore, an action similar to the case at hand was filed in the probate court for Chippewa County, state of Michigan, where Plaintiff sued Mrs. McDonald for embezzling funds from the Trust; the probate court, upon Plaintiff's "Motion for Reimbursement to the Trust of Trust Funds," generated a court order entered on or about April 5, 2021,[1] which ordered that Mrs. McDonald be held individually liable for **$38,375.00** in charitable donations that she distributed

---

[1] *See* "Exhibit A" attached hereto (the court order made by the probate court for Chippewa County, state of Michigan, under Case No. 16-27379-TV).

from the Trust, and that Mrs. McDonald individually reimburse the Trust in the amount of $38,375.00.

12.     Therefore, because a Michigan court already found Mrs. McDonald liable for embezzling the Trust's funds, there is a high likelihood that this Court will reach similar conclusions, as the fact patterns are similar.

13.     Mr. Bashore was the pastor at Pickford during all times relevant in this matter, and it is believed that he directly facilitated the laundering of the Trust's funds through Pickford.

14.     As of the date of this Complaint, the Trust's funds have been disbursed and distributed among the Trust's named beneficiaries, as Mrs. Myerscough, the Trustor of the Trust, died on May 26, 2020.

15.     Mrs. McDonald was named as a trustee in the Trust[2] while the Trust was in effect and yet undisbursed, of which Plaintiff was a beneficiary, and Mrs. McDonald held all rights and duties associated with the fiduciary position; Mrs. McDonald is also the identified agent in a Power of Attorney executed by Mrs. Myerscough in the year 1996, which awarded Mrs. McDonald with further rights and capacities regarding the Trust and the administration thereof.

16.     Mrs. McDonald abused her fiduciary position as a trustee in the Trust and as an agent in the Power of Attorney by misappropriating the funds of the Trust for her personal gain, thereby egregiously breaching her fiduciary duties owed to Mrs. Myerscough, as well as her fiduciary duties owed to the beneficiaries of the Trust, all in assistance with co-conspirators United, Pickford, and Mr. Bashore.

---

[2] *See* attached hereto as "Exhibit B" the Dorothy Grace Myerscough Trust by Brown and Streza in Orange County, California.

17.     Furthermore, while Mrs. Myerscough was alive, Mrs. McDonald indubitably committed the exploitation of a vulnerable adult against Mrs. Myerscough by taking advantage of Mrs. Myerscough in her old age by embezzling the Trust's funds while Mrs. Myerscough was yet alive and while being the Trustor of the Trust.

18.     Upon information and belief, Mrs. McDonald did not have a legitimate source of income during the years in which she misappropriated the Trust's funds, so it is reasonable to conclude that any financial activity on the part of Mrs. McDonald during that time was only possible through the use of the misappropriated funds of the Trust, which she misappropriated in many ways and with no remorse or consideration for her fiduciary and common law duties.

19.     Mrs. McDonald egregiously abused—for *twenty-five years* with the privileges awarded to her via the Power of Attorney, as well as the rights awarded to her as a trustee in the Trust—her fiduciary position in the Trust as a trustee, as well as her position as an agent in the Power of Attorney; Mrs. McDonald abused her discretionary control of the multi-million-dollar Trust by embezzling the Trust's funds, which funds would have compounded vastly in that amount of time but-for Mrs. McDonald's actions.

20.     Mrs. McDonald, who is on staff at Pickford,[3] consistently disbursed small amounts of under $250.00 of the embezzled funds—which is reasonable believed to have been done to avoid detection, coupled with consistent and repetitive disbursement patterns—into Pickford, and by extension, United, among other religious organizations, and then received the laundered money back for her personal use.[4]

---

[3] *See* attached hereto as "Exhibit C" Pickford United Methodist Church Staff.

[4] *See* attached hereto as "Exhibit D" the Annual Accounts of Carol McDonald, the Trustee of the Dorothy Grace Myerscough Trust; *see* attached hereto as "Exhibit E" the Central Savings Bank Account records of the Dorothy Grace

21.     These illegitimate donations were abused by Mrs. McDonald, with the assistance of United and Pickford, as well as with the assistance, facilitation, and knowledge of Mr. Bashore, the pastor at Pickford, for personal gain and to the detriment of the beneficiaries of the Trust, including Plaintiff.

22.     Defendants converted funds from the Trust and misrepresented them as donations and charitable contributions, to defraud the unsuspecting beneficiaries of the Trust, in furtherance of Mrs. McDonald's breach of her fiduciary duties and organized wrongful conduct with co-conspirators United, Pickford, and Mr. Bashore against Plaintiff.[5]

23.     Meanwhile, Mrs. McDonald failed to maintain adequate financial statements and credit card statements, never obtaining full bank statements but instead providing sporadic photocopied and handwritten ledgers of checkbooks to, upon information and belief, make the embezzled funds untraceable and to avoid showing credit card expenditures, in furtherance of converting the Trust's funds, breaching of her fiduciary duties, and participating in organized wrongful conduct with co-conspirators United, Pickford, and Mr. Bashore.

24.     Furthermore, Defendants transmitted confidential trust documents in order to embezzle the Trust's funds, which should have only been accessed by the rightful beneficiaries of the Trust and not by third parties.

25.     Defendants misappropriated and converted funds from the Trust, which were duly intended to be possessed by the Trust's named beneficiaries, such as Plaintiff, but were rather

---

Myerscough Trust; *see* attached hereto as "Exhibit F" the Central Savings Bank Account Ledgers of the Dorothy Grace Myerscough Trust.

[5] *See* Exhibit D.

transmitted to Pickford—and by extension, United—and other churches through Defendants' joint organized wrongful conduct against Plaintiff and the other beneficiaries of the Trust.

26.     Again, Mrs. McDonald embezzled, misappropriated, and converted funds from the Trust, with the assistance of co-conspirators United, Pickford, and Mr. Bashore, consistently for approximately the same amount of money month to month for the past approximate twenty-five years, in small amounts so as to avoid detection, and in amounts that were not required to be reported to the Internal Revenue Service.[6]

27.     Defendants deceptively characterized transactions of the embezzled Trust's funds as "Charitable Donations" in order to convert the Trust's funds and further defraud the Trust's beneficiaries.[7]

28.     These "Charitable Donations" were taken from the Trust like clockwork and "donated" to co-conspirator Pickford—and by extension, United—without the knowledge of Plaintiff or the other named beneficiaries of the Trust.[8]

***Trust Provisions***

29.     Section 5.01.3 of the Trust, entitled "Incompetency of Trustor," clearly outlines what can be done with the funds of the Trust if the Trustor becomes incompetent; said section provides the following:

> If at any time, either in the Trustee's absolute discretion or as certified in writing by two licensed physicians, the Trustor has become physically or mentally incapacitated, whether or not a court of competent jurisdiction has declared the Trustor incompetent, mentally ill, or in need of a conservator, the Trustee shall pay to or

---

[6] *See id.*

[7] *See* Exhibit E.

[8] *See* Exhibit D.

apply for the benefit of the Trustor and the Trustor's spouse, if the Trustor has a spouse, and any then living child of the Trustor who is under the age of twenty-three (23), in monthly or other convenient installments, not less frequently than annually, as much of the net income and principal of this trust, up to the whole thereof, as the Trustee, in the Trustee's discretion, deems necessary for their reasonable health, education, support and maintenance. Any net income not distributed shall be accumulated and added to the principal. The Trustor shall be primary beneficiary of this distribution provision and the Trustor's needs shall be fulfilled prior to any distribution to Trustor's spouse or children.[9]

30.     Pursuant to the foregoing provision from the Trust itself, Mrs. McDonald was clearly *not allowed* within her fiduciary position to make donations from the Trust to United, Pickford, or otherwise.

31.     Within the Trust, there is *nothing* written referencing or implying, in any way, that stipulates or authorizes donations to be made from the Trust into any church, or to any non-profit organization, let alone a religious organization.

32.     However, as aforementioned, approximately more than **$360,000.00** of the Trust's funds were misappropriated and converted by Defendants.

33.     Plaintiff, as a beneficiary of the Trust, was completely defrauded and unable to discover the misappropriation of the Trust's funds until recently, upon initiating litigation against Defendants and upon obtaining, through court intervention, the incriminating financial statements of Defendants which exhibit the fraudulent transactions in question.

34.     Prior to initiating court action against Defendants, Plaintiff, at the time, fully trusted whatever the trustee, Mrs. McDonald, was doing in the Trust and as an agent in the Power of

---

[9] Exhibit B.

Attorney granting her further rights over the Trust; Plaintiff trusted that whatever Mrs. McDonald

was doing was the honest and the correct thing to do.

35.     Therefore, because of Plaintiff's trust in Mrs. McDonald, Plaintiff was taken

advantage of by Mrs. McDonald.

36.     Plaintiff's trust was abused by Mrs. McDonald.

37.     Plaintiff has never approved the donation of any money, or otherwise, to any

religious organization in any way, shape, or form; furthermore, Plaintiff was not aware, and could

not have been aware, that Defendants were embezzling the donations—i.e., Plaintiff did not know

that what Mrs. McDonald was doing was against the law, because Plaintiff did not know and could

not have known of the embezzlement taking place, and Plaintiff assumed that Mrs. McDonald was

doing everything correctly and lawfully, which is why Plaintiff did not act sooner with respect to

raising a claim for damages to ameliorate the embezzled funds from the Trust.

38.     There is, therefore, *no* "estoppel" argument that can be made precluding Plaintiff's

claim as a result of Plaintiff's actions or inactions, as Plaintiff acted and raised his claim as soon

as he realized the egregious and felonious nature of the situation created by Defendants.

39.     This is the end of this "General Allegations and Statement of Facts" section.

## FIRST CAUSE OF ACTION
### *Civil Embezzlement*

40.     Plaintiff incorporates and realleges the foregoing paragraphs as if fully set forth

herein.

41.    In the landmark case of *Moore v. United States*,[10] the Supreme Court defined that embezzlement occurs when:

    a. a person;

    b. is legally entrusted;

    c. with property;

    d. by the rightful owner of said property;

    e. but at some point thereafter;

    f. the person fraudulently takes;

    g. the property in question; and

    h. with the intent to deprive the rightful owner of said property.

42.    In defining embezzlement differently, pursuant to the case of *Moore*, *Moore* further provides that,

    a. embezzlement is the *fraudulent;*

    b. appropriation;

    c. of property;

    d. by a person;

    e. to whom such property has been entrusted;

    f. or into whose hands it has lawfully come.

43.    In applying the foregoing definitions of embezzlement to the case at hand against Defendants, it is indubitable and unmistakable that,

    a. Mrs. McDonald, a person;

---

[10] 160 U.S. 268 (1895).

    b.  was legally entrusted as a trustee;

    c.  with the funds of the Trust (the property);

    d.  by Mrs. Myerscough, the rightful owner of said funds;

    e.  but at some point thereafter;

    f.  Mrs. McDonald fraudulently took;

    g.  the property (the Trust's funds) in question; and

    h.  Mrs. McDonald unmistakably had the intent to deprive Mrs. Myerscough and the other named beneficiaries in the Trust of said property (the Trust's funds).

44.    Furthermore, in applying the alternate definition of embezzlement as more specifically covered in the case of *Moore*, it is indubitable and unmistakable that,

    a.  Mrs. McDonald *fraudulently*[11] appropriated;

    b.  the property (the Trust's funds); and

    c.  Mrs. McDonald was and is a person to whom such property (the Trust's funds) was entrusted, or into whose hands the property (the Trust's funds) has lawfully come.

45.    Furthermore, in the matter at hand, it is indisputable and clear that (i) Mrs. McDonald did not have the lawful authority to appropriate the Trust's funds—only to administer them, but not apply them to herself; that (ii) Defendants acted knowingly as to the crime they were committing; that (iii) Defendants controlled the funds of the Trust with the intent to deprive Mrs. Myerscough and the Trust's beneficiaries of said funds; that (iv) Mrs. McDonald's terms of use of

---

[11] "Fraudulently" because Mrs. McDonald was *not* entitled to use the Trust's funds for her personal benefit, and because Mrs. McDonald perpetrated wrongdoing in order to obtain the funds. Therefore, any personal use of the Trust's funds by Ms. McDonald is fraudulent.

the Trust's funds were limited, and she was only authorized to use the funds for certain things such as for the health, education, support, and maintenance of Mrs. Myerscough; that (v) despite Mrs. McDonald's limited terms of use of the funds, she converted the funds to her benefit and to the detriment of Mrs. Myerscough and the Trust's beneficiaries; and that (vi) Mrs. McDonald committed embezzlement against the Trust because, without lawful authority, she knowingly took control of the Trust of Mrs. Myerscough, who was a vulnerable adult, while acting in a position of trust and confidence and with the intent to deprive Mrs. Myerscough and the Trust's beneficiaries of the Trust's funds.

46.     With the foregoing established, it is conspicuously clear that the elements of federal embezzlement, as explained above, are amply satisfied by Defendants' wrongful and deceitful actions against Plaintiff and against the Trust's other beneficiaries; indeed, Defendants indisputably stole Mrs. Myerscough's property, thereby making them thieves liable for theft— more specifically, embezzlement; wherefore, having established theft on the part of Defendants, it is also clear that Defendants committed embezzlement, as they indubitably did embezzle (i.e., steal) funds from the Trust, which they did for a substantial and significant period of twenty-five years.

47.     Therefore, Defendants are liable for embezzlement against Plaintiff, as they *did*, in fact, embezzle funds that belonged to Plaintiff, which were only intended for Plaintiff's use as well as for the use of the other beneficiaries of the Trust.

48.     As a direct and proximate result of Defendants' intentional embezzlement of Trust funds, Plaintiff has been damaged in the approximate amount of **$12,000,000.00**, with actual damages to be established at trial.

49.     This is the end of this "First Cause of Action" section and its subsections.

## SECOND CAUSE OF ACTION
### *Civil Financial Fraud and Racketeering*

50.     Plaintiff incorporates and realleges the foregoing paragraphs as if fully set forth herein.

51.     It is clear that Defendants committed financial fraud against Plaintiff, as their activities were fraudulent when they embezzled funds from the Trust that were not theirs to take; Defendants engaged in fraudulent schemes, or fraudulent artifices, to misappropriate the funds of the Trust.

52.     18 U.S. Code § 1344 provides that "[w]however knowingly executes, or attempts to execute, a scheme or artifice . . . (2) to obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or *under the custody or control of, a financial institution*, by means of false or fraudulent pretenses, representations, or promises . . ."[12] (emphasis added) is guilty of financial fraud, and "shall be fined not more than $1,000.000.00 or imprisoned not more than thirty (30) years, or both."[13]

53.     Therefore, breaking down the foregoing rule into its elements, the following components apply:

      a.   whoever *knowingly*;

      b.   executes or attempts to execute;

      c.   a scheme or artifice;

---

[12] 18 U.S. Code § 1344(2).

[13] 18 U.S. Code § 1344.

      d.  to obtain;

      e.  any of the moneys, funds, credits, assets, securities;

      f.  or other property owned by;

      g.  or under the custody or control of;

      h.  a financial institution;

      i.  by means of false or fraudulent pretenses, representations, or promises;

      j.  is liable for financial fraud.

54.    In applying the foregoing factors to the case at hand, it is indubitable and unmistakable that,

      a.  Defendants *knowingly*;

      b.  executed;

      c.  a scheme or artifice;

      d.  to obtain;

      e.  funds;

      f.  controlled by a financial institution;

      g.  by means of false or fraudulent pretenses, representations, and promises, such as falsely purporting the extracted funds to be duly made donations.

55.    Furthermore, Defendants created a fraudulent scheme in order to embezzle the Trust's funds, which involved attempts to *knowingly* defraud Plaintiff and the Trust's other beneficiaries, in which attempts they succeeded, and Defendants did, in fact, receive a benefit as a result of their schemes—access to the misappropriated funds—which makes Defendants liable for financial fraud, as their fraud involved monetary funds, i.e., financial resources.

56.    Because Defendants' financial documents are relevant to the claims of this case—and since this is a case of financial fraud, the financial documents are the main focus of this case—Plaintiff and the experts and professionals that Plaintiff hires to assist in this case have the right to inspect said financial documents of Defendants.

57.    Plaintiff is not only prepared to obtain Defendants' financial documents via discovery, but Mr. Tim Tribe[14] of INGEN Financial Forensics in Tempe, Arizona, is aware of this case and is on notice and ready to analyze and dissect the financial documents of Defendants.

58.    Furthermore, Defendants are liable for racketeering, which is defined under 18 U.S.C. § 1961 as "any act or threat involving murder, kidnapping, gambling, arson, *robbery*, bribery, extortion, *dealing in obscene matter*, or dealing in a controlled substance or listed chemical . . ." (emphasis added).

59.    Defendants are liable for racketeering because their acts involved robbery—i.e., theft—of the Trust's funds, as well as impropriety in general while intentionally perpetrating wrongdoing.

60.    The civil provisions of the Racketeer Influenced & Corrupt Organization Act (hereinafter referred to as "**RICO**") are included in 18 U.S.C. §§ 1961-1968.

61.    In applying the above-referenced provisions of RICO to the matter at hand, Defendants agreed to, and did conduct and participate in, the conduct of an enterprise's affairs through a pattern of racketeering activity and for the unlawful purpose of intentionally defrauding Plaintiff.

---

[14] *See* "Exhibit G" attached hereto (professional information of Tim Tribe).

62.     Pursuant to, and in furtherance of their fraudulent scheme, Defendants committed multiple related acts of misappropriation of the Trust's funds.

63.     As an actual and proximate result of Defendants' racketeering activities, as well as Defendants' violations of 18 U.S.C. § 1962(c), Plaintiff has been unjustly injured in his business and property, and so he is, therefore, entitled to relief, including actual damages, proximate damages, treble damages, punitive and exemplary damages, and attorney's fees and court costs, among other reasonable fees incurred in preparing and bringing this action.

64.     This is the end of this "Second Cause of Action" section and its subsections.

### THIRD CAUSE OF ACTION
*Fraud, Misrepresentation, and Concealment*

65.     Plaintiff incorporates and realleges the foregoing paragraphs as if fully set forth herein.

66.     The causes of action of "Fraud" and "Misrepresentation" are referenced first and covered herein jointly, and the cause of action of "Concealment" is addressed separately and secondly hereinbelow.

67.     "Fraud" and "Misrepresentation" are treated as substantially the same cause of action herein—except when described individually with particularity hereinbelow—because to misrepresent pertinent facts related to this matter is to commit fraud, and to commit fraud one must make misrepresentations, so, the two causes of action rely on the same elements expounded upon hereinbelow.

68.     By definition, a "misrepresentation" is a "false or misleading statement or material omission which renders other statements misleading, with the intent to deceive."[15]

69.     Furthermore, a "[m]isrepresentation is one of the elements of common law fraud, and other causes of action for fraud . . . ."[16]

70.     Additionally, "[i]n civil litigation, allegations of fraud might be based on a *misrepresentation* of fact that was either intentional or negligent"[17] (emphasis added).

71.     Therefore, a "misrepresentation" constituting fraud under law is comprised of the following elements:

      a.   For a statement;

      b.   to be an intentional misrepresentation;

      c.   constituting fraud;

      d.   the person who made the misrepresentation;

      e.   must either;

      f.   have known that the statement was false;

      g.   or made the statement recklessly as to its truth; *and*

      h.   the misrepresenting person must have also intended;

      i.   that the person to whom the statement is made;

      j.   would rely upon it; *and*

      k.   the hearer must then have reasonably relied on the promise; *and*

---

[15] Wex Definitions Team, MISREPRESENTATION, https://www.law.cornell.edu/wex/misrepresentation (last updated Dec. 2020).

[16] *Id.*

[17] Wex Definitions Team, FRAUD, https://www.law.cornell.edu/wex/fraud (last updated May 2020).

l.   the hearer must have also been harmed because of that reliance.[18]

72.   In applying the foregoing elements to the factors of the case at hand, it is clear that,

a.   there were several and recurring implicit or explicit misrepresentations made by Mrs. McDonald to the beneficiaries the Trust that everything with respect to the Trust was being handled correctly and appropriately, which misrepresentations constituted false language that allowed Mrs. McDonald to misappropriate the Trust's funds by "donating" them to several different churches;

b.   Mrs. McDonald's misrepresentations were intentionally made for the purposes of unjust and unlawful pecuniary gain;

c.   Mrs. McDonald's misrepresentations constituted *intentional* fraud because,

i.   the person who made the misrepresentations, Mrs. McDonald;

ii.   *knew*;

iii.   that the misrepresentations were false; *and*

d.   Mrs. McDonald clearly intended;

e.   that the person(s) to whom the misrepresentations were made—i.e., the Trust's beneficiaries;

f.   would rely upon Mrs. McDonald's misrepresentations; *and*

g.   the hearer(s) of Mrs. McDonald's misrepresentations reasonably relied on Mrs. McDonald's implied or expressed misrepresentation that everything in the Trust was being handled correctly and appropriately; *and*

---

[18] *See id.*

h.  the hearer(s)—i.e., the Trust's beneficiaries, but more specifically, Plaintiff—
were harmed by relying on Mrs. McDonald's misrepresentations that the Trust
was being handled correctly and appropriately, as this allowed Mrs. McDonald
to embezzle the Trust's funds for over twenty-five years, harming the
beneficiaries by depriving them of the funds to which they were duly entitled
to receive.

73.     Therefore, Mrs. McDonald's conduct constitutes fraud due to the implied or
expressed misrepresentations she made to the Trust's beneficiaries over the course of the twenty-
five years during which she misappropriated the Trust's funds.

74.     Furthermore, when Mrs. McDonald made the above-referenced misrepresentations
to Plaintiff, they had no reasonable grounds for believing them to be true—in that Mrs. McDonald
had no intention of performing as she represented and/or Mrs. McDonald had no reasonable basis
for believing that she would be capable of performing said obligations.

75.     In fact, as evidenced by Mrs. McDonald's actions, Mrs. McDonald had no intention
of providing the promised care regarding the Trust administration and the care of the Trust's funds.

76.     Additionally, Mrs. McDonald made these intentional misrepresentations to Plaintiff
for the purpose of maximizing her pecuniary gain, to the detriment of Plaintiff and the other
beneficiaries in the Trust.

77.     As a result of Mrs. McDonald's fraudulent conduct regarding the administration of
the Trust and its funds, Plaintiff has suffered, and continues to suffer, substantial mental and
emotional distress, as well as suffering or anguish such as fright, nervousness, grief, anxiety,
worry, mortification, shock, humiliation, and indignity, as well as physical pain, all of which were

caused by the fraudulent conduct of Mrs. McDonald and the other Defendants jointly, which no reasonable person in a civilized society should be expected to endure.

78.     Furthermore, Plaintiff also suffered substantial economic losses due to Defendants fraudulent actions with respect to the Trust's funds.

79.     Therefore, in consideration of the facts set forth hereinabove, it is clear that Defendants are liable for fraud against Plaintiff.

80.     Regarding the cause of action of "Concealment," under contract law, which also applies to trusts since a trust is essentially a contract,

> . . . a plaintiff can recover from a defendant on the grounds of fraudulent concealment where the defendant (1) concealed or suppressed a material fact; (2) had knowledge of this material fact; (3) that this material fact was not within reasonably diligent attention, observation, and judgment of the plaintiff; (4) that the defendant suppressed or concealed this fact with the intention that the plaintiff be misled as to the true condition of the property; (5) that the plaintiff was reasonably so misled; and (6) that the plaintiff suffered damage as a result (emphasis added).[19]

81.     In applying the foregoing elements of "fraudulent concealment" to the case at hand, it is indubitable that (i) Defendants, indeed, "concealed [and] suppressed a material fact" pertaining to the Trust—specifically, that Defendants were embezzling the Trust's funds; that (ii) Defendants obviously had knowledge of this material fact that they were embezzling the Trust's funds; that (iii) "this material fact"—the fact that Defendants were embezzling the Trust's funds— "was not within reasonably diligent attention, observation, and judgment of [] [P]laintiff" (emphasis added), as Defendants were being very devious and careful as to how they embezzled the funds, which is

---

[19] Legal Information Institute, FRAUDULENT CONCEALMENT.
https://www.law.cornell.edu/wex/fraudulent_concealment (last visited July 13, 2022).

why and how they were able to get away with embezzling the Trust's funds for over twenty-five years; that (iv) Defendants "suppressed or concealed" the fact that they were embezzling the Trust's funds "with the intention that [] [P]laintiff be misled as to the true condition of the property"—i.e., the true condition of the Trust in that the Trust was being embezzled; that (v) Plaintiff was, indeed, "reasonably so misled" by Defendants' fraudulent schemes; and that (vi) Plaintiff suffered clear damages, as provided herein, due to Defendants foregoing actions in this regard.

82.    Therefore, in consideration of the facts set forth in the foregoing paragraphs hereinabove, it is clear that Defendants are liable for committing **fraudulent concealment** against Plaintiff.

83.    Wherefore, this Third Cause of Action section has established and proved that Defendants' dishonest actions against Plaintiff in embezzling the funds, to which Plaintiff is entitled, make Defendants liable for fraud, and for misrepresentation, and for concealment against Plaintiff, to the significant and unfair detriment of Plaintiff.

84.    This is the end of this "Third Cause of Action" section and its subsections.

### FOURTH CAUSE OF ACTION
*Civil Aiding and Abetting of a Breach of Fiduciary Duties*

85.    Plaintiff incorporates and realleges the foregoing paragraphs as if fully set forth herein.

86.    The breaching of fiduciary duties *is*, itself, considered tortious conduct; thusly, the breaching of fiduciary duties is a tort.

87.    Therefore, this cause of action could also be understood as "Aiding and Abetting Tortious Conduct," which is covered under the Restatement (Second) of Torts § 876(b).

88.     The elements contained in the Restatement (Second) of Torts § 876(b) to prove aiding and abetting liability include that,

   a.  "[f]or harm resulting to a third person . . .";[20]

   b.  "from the tortious conduct of another . . .";[21]

   c.  "one is subject to liability if he . . .";[22]

   d.  "knows that the other's conduct constitutes a breach of duty . . .";[23] and

   e.  "gives substantial assistance or encouragement to the other so to conduct himself."[24]

89.     In applying the foregoing elements of the Restatement (Second) of Torts § 876(b) to the case at hand, it is evident that (i) harm did, indeed, result upon third persons—Plaintiff and the Trust's other beneficiaries; that (ii) this harm occurred from the tortious conduct of another— i.e., Defendants' tortious and fraudulent conduct in embezzling funds from the Trust for over twenty-five years; that (iii) Defendants are subject to liability because (iv) they know and knew "that [each] other's conduct constitute[d] a breach of [their fiduciary] dut[ies]; and that (v) they g[a]ve each other "substantial assistance or encouragement so to conduct [themselves, respectively]."

---

[20] Restatement (Second) of Torts § 876(b) (1979).

[21] *Id.*

[22] *Id.*

[23] *Id.*

[24] *Id.*

90.     Furthermore, based upon the trust relationship with Plaintiff, Mrs. McDonald owed Plaintiff a fiduciary duty, which obligated Mrs. McDonald to place Plaintiff's interests above her own interests.

91.     In performing the acts alleged by Plaintiff herein, Mrs. McDonald breached the fiduciary duties owed to Plaintiff because Defendants' conduct was engaged in knowingly and intentionally against Plaintiff's consent and interest, and to Plaintiff's great detriment.

92.     Plaintiff was severely harmed by this intentional and cavalier betrayal by his own trustee, who owed him, as a fiduciary, a high and portentous duty of care.

93.     Mrs. McDonald utterly betrayed and destroyed Plaintiff's trust; acts such as Mrs. McDonald's acts should never take place in the fiduciary relationship of a trustee and beneficiary.

94.     As a result of this betrayal and egregious and outrageous breach of trust, Plaintiff suffered emotional and physical distress, and has been further injured financially.

95.     The interests of justice demand that Plaintiff be sufficiently, equitably, and fairly compensated with economic and non-economic damages.

96.     Defendants' alleged acts can be considered willful, wanton, malicious, and oppressive, which justifies an award of **punitive damages** against Defendants in this matter.

97.     This is the end of this Fourth Cause of Action section and its subsections.

### FIFTH CAUSE OF ACTION
*Unjust Enrichment*

98.     Plaintiff incorporates and realleges the foregoing paragraphs as if fully set forth herein.

99.     In common law, unjust enrichment is defined as, and occurs when, a party confers a benefit upon another party without receiving the proper restitution required under civil law principles.[25]

100.    Furthermore, to recover on a claim of unjust enrichment, a plaintiff must show that the defendant was unjustly enriched at the plaintiff's expense,[26] and that the plaintiff suffered damages as a result.

101.    In applying the foregoing definition of "Unjust Enrichment" to the case at hand, Plaintiff relies on the doctrine of *Res Ipsa Loquitur* and proffers to the Court that in finding unjust enrichment in this case, "the thing [truly] speaks for itself."

102.    As the facts of this case make evident, and which reasonably compel one to strongly conclude, Defendants were unjustly enriched at Plaintiff's expense; Defendants' enrichment was *unjust* because they did not deserve the money that they embezzled from the Trust, and Defendants enrichment was at Plaintiff's expense because Plaintiff is the one entitled to receive the Trust's funds—not Defendants—and so any monies misappropriated from the Trust's financial account were done so at Plaintiff's direct expense, because Plaintiff would have received a benefit from the misappropriated funds had they not been taken, but since the misappropriated funds are gone from the Trust, Plaintiff can no longer receive that benefit that he was entitled to, save it be through intervention of this Court.

103.    Therefore, the elements and requirements of "Unjust Enrichment" are amply proven and satisfied herein.

---

[25] *See* Legal Information Institute, UNJUST ENRICHMENT, https://www.law.cornell.edu/wex/unjust_enrichment (last visited Aug. 15, 2022).

[26] *See id.*

104.    Defendants cannot escape the fact that they caused significant, palpable damages to Plaintiff by their tortious actions, and so Plaintiff is duly entitled to relief from the Court against Defendants.

105.    This is the end of this "Fifth Cause of Action" section and its subsections.

## SIXTH CAUSE OF ACTION
### *Permanent Injunction*

106.    Plaintiff incorporates and realleges the foregoing paragraphs as if fully set forth herein.

107.    Monetary damages—although needed, proper, warranted, and wanted in this matter—are inadequate to compensate Plaintiff fully and fairly for his injuries; therefore, Plaintiff seeks a permanent injunction against Defendants to prevent Defendants from engaging in further injurious conduct against Plaintiff.

108.    Pursuant to the U.S. Supreme Court case of *Weinberger v. Romero-Barcelo*,[27] the four-step test that a plaintiff must pass to obtain a permanent injunction is as follows:

   a.   that the plaintiff has suffered an irreparable injury;

   b.   that remedies available at law, such as monetary damages, are inadequate to compensate for the injury;

   c.   that the remedy in equity is warranted upon consideration of the balance of hardships between the plaintiff and defendant; and

   d.   that the permanent injunction being sought would not hurt public interest.

---

[27] 456 U.S. 305 (1982).

109.    In applying the foregoing elements of the four-step test provided above to the case at hand, the following is true:

    a.   Defendants' actions have irreparably deprived Plaintiff of, among other things, the pecuniary interest that the stolen funds of the Trust could have earned during the twenty-five years that Defendants misappropriated the Trust's funds.

    b.   Plaintiff has, furthermore, suffered irreparable emotional and mental harm due to the stress, anxiety, desperation, anger, feelings of having been personally violated, and other overwhelming negative emotions that Plaintiff has suffered and continues to suffer as a result of Mrs. McDonald's breach of duty and Defendants' tortious conduct with respect to embezzling the Trust and the breach of the duties associated thereto.

    c.   Therefore, Defendants' actions have caused Plaintiff irreparable injuries in this regard.

    d.   Remedies available at law, such as monetary damages, are inadequate to fully and fairly compensate Plaintiff's mental and emotional injuries caused by Defendants' conduct.

    e.   The permanent injunction that Plaintiff seeks is sought to prevent Defendants from causing further damage to Plaintiff via legal process or otherwise.

    f.   In consideration of the balance of hardships between Plaintiff and Defendants in conjunction with the injunction sought as described above, the balance favors Plaintiff because Defendants *should* be enjoined for what they did—the interests of justice and equity favor this conclusion—and Defendants would

suffer no unfair loss due to being enjoined from harming Plaintiff via legal process or otherwise, and Plaintiff would be *justly* and *deservedly* benefited from the injunction sought.

g. The permanent injunction sought against Defendants would in no way hurt the public interest; if anything, the public interest demands that Defendants be enjoined from causing any more undue damage to Plaintiff.

110. Pursuant to the foregoing, the law favors granting a permanent injunction to Plaintiff against Defendants.

111. Furthermore, Defendants' *intentional* conduct is the **actual cause** of Plaintiff's emotional injuries and other injuries, because *but-for* Defendants' outrageous and egregious conduct in embezzling funds from the Trust, Plaintiff would not have suffered the severe emotional injuries, as well as the other injuries, he has suffered.

112. Therefore, Defendants' entire conduct, as expounded upon hereinabove, is the clear actual cause of Plaintiff's emotional, mental, and psychological injuries, as well as the other damages alleged herein imposed against Plaintiff due to Defendants' conduct with respect to embezzling the Trust's funds.

113. Moreover, Defendants' conduct is the clear **proximate cause** of Plaintiff's emotional injuries and other injuries because the risk of harm against Plaintiff associated with Defendants' conduct was plainly **foreseeable** and **preventable**, and Defendants had a duty to prevent said risk of reasonable harm against Plaintiff.

114. Indeed, Defendants were aware, or should have been aware, of the significant harm that their conduct would cause upon Plaintiff, but they went forward with that course of conduct

regardless of the *foreseeable and preventable* damages to Plaintiff and the high likelihood that Plaintiff would suffer said damages.

115.   This is the end of this Sixth Cause of Action section and its subsections.

## JURY DEMAND

116.   Plaintiff hereby demands a jury to adjudicate the facts of this case; Plaintiff demands that a jury of his peers act as the trier of fact in this matter, as that would best satisfy the interests of justice.

## CONCLUSION

In conclusion, it is evident that Plaintiff has suffered significant damages due to Defendants' tortious course of conduct and perpetration of wrongdoing, as has heretofore been explained and demonstrated.

Mrs. McDonald embezzled funds on a *monthly* basis with the help of co-conspirators United, Pickford, and Mr. Bashore, for over twenty-five years. While the amounts taken out monthly may have seemed small and insignificant, over the course of twenty-five years, they caused an enormous depletion of the Trust's funds.

Indeed, Defendants were aware, or should have been aware, of the severe consequences that their tortious actions would have on not only Plaintiff's life, but on the lives of the other beneficiaries of the Trust as well. Even though the funds of the Trust have been disbursed, there is no doubt that Defendants would continue to remorselessly misappropriate the Trust's funds if it were possible.

Truly, it is not fair that Mrs. McDonald misappropriated the Trust's funds, embezzled the Trust's funds, and otherwise stole the Trust's funds from the Trustor and the named beneficiaries

of the Trust, including Plaintiff, with the help of co-conspirators United, Pickford, and Mr. Bashore. Plaintiff did not deserve the severe damages caused to him by Defendants by depleting the Trust's funds prematurely, unfairly, and tortiously, and so Plaintiff is entitled to relief from the Court against Defendants.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants for the damages suffered as alleged herein, as follows:

A. awarding Plaintiff all compensatory damages, including consequential and incidental damages, as well as actual and proximate damages, as a result of Defendants' wrongdoings against Plaintiff, in an amount to be proven at trial and determined by the trier of fact, but totaling no less than **$12,000,000.00**—with Pickford, Mrs. McDonald, and Mr. Bashore being jointly liable for **$2,000,000.00**, and with United, as the larger entity liable under the doctrine of *Respondeat Superior*, being liable for **$10,000,000.00**;

B. awarding Plaintiff all punitive and exemplary damages against Defendants in an amount to be proven at trial and determined by the trier of fact;

C. awarding Plaintiff attorney's fees, legal fees, court costs, and other reasonable and appropriate legal costs;

D. granting Plaintiff a permanent injunction against Defendants to restrain Defendants from further harming Plaintiff via legal process or otherwise, in any way, shape, or form; and

E. awarding such further, different, and other relief as the Court deems just, proper, and

equitable under the circumstances of this matter.

DATED November  14, 2022.

/s/ John J. Myerscough
John J. Myerscough,
*Plaintiff Pro Se*

THERE ARE APPROXIMATELY 975 PAGES OF EXHIBITS, FROM <u>EXHIBIT **A**</u> TO <u>EXHIBIT **G**</u>, WHICH SUPPORT AND CORRESPOND TO THIS COMPLAINT, WHICH WILL BE FILED WITH THIS COURT PROMPTLY AFTER THE FILING OF THIS COMPLAINT.



1 Peel off old labels   2 Fold this flap down   3 Expose adhesive   4 Fold top flap down   5 Press this flap up to seal

PULL T

-800-742-5877)
ion near you.

ily contain
ia, and must
other than
ight.

of no commercial
ents. Visit
l as a document.

weigh 8 oz. or less.
d by weight.

of electronic media
Do not send cash

**ıvelope**

ope a second time –
er recipient.

ılatform, reflecting
ices worldwide.
1 100% recycled
able.

OHN MYERSCOUGH
928) 208-7510
B-18
?76 LAKE HAVASU AVE S
_AKE HAVASU CIT  AZ 86403

1 LBS      1 OF 1
SHP WT: 1 LBS
DATE: 14 NOV 2022

SHIP 399 FEDERAL BUILDING
TO:  110 MICHIGAN ST NW

GRAND RAPIDS  MI 49503-2300

MI 495 9-08

(420) 49503-2313

UPS 2ND DAY AIR          2
TRACKING #:1Z 870 X41 02 3772 8646

This envelope
with the follo

**UPS Next Da**
**UPS Worldwi**
**UPS 2nd Day**

Do not use th

**UPS Ground**
**UPS Standar**
**UPS 3 Day S**
**UPS Worldwi**

**Apply shippi**

Serving you for more than 100 years
United Parcel Service.